Approved:  /s/ BK
           _____
           BENJAMIN D. KLEIN
           Assistant United States Attorney

Before:    THE HONORABLE PAUL E. DAVISON
           United States Magistrate Judge
           Southern District of New York

22mj3949

- - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA             :    **COMPLAINT**

         - v. -                      :    Violation of
                                          21 U.S.C. § 846
ROMAN MUNOZ and EFRAIN FERNANDEZ,    :
                                          COUNTY OF OFFENSE:
                    Defendants.      :    ORANGE

                                     :

- - - - - - - - - - - - - - - - - - X

SOUTHERN DISTRICT OF NEW YORK, ss.:

       MARK HADZEWYCZ, being duly sworn, deposes and says that he is a Special Agent with the Drug Enforcement Administration ("DEA"), and charges as follows:

### COUNT ONE
### (Narcotics Conspiracy)

       1.   From in or about April 2022, through on or about May 2, 2022, in the Southern District of New York and elsewhere, ROMAN MUNOZ and EFRAIN FERNANDEZ, the defendants, and others known and unknown, intentionally and knowingly, did combine, conspire, confederate, and agree together and with each other to violate the narcotics laws of the United States.

       2.   It was a part and an object of the conspiracy that ROMAN MUNOZ and EFRAIN FERNANDEZ, the defendants, and others known and unknown, would and did distribute and possess with the intent to distribute controlled substances, in violation of 21 U.S.C. § 841(a)(1).

       3.   The controlled substances that ROMAN MUNOZ and EFRAIN FERNANDEZ, the defendants, conspired to distribute and possess with the intent to distribute were: (i) 50 grams and more

of methamphetamine, its salts, isomers, and salts of its isomers, in violation of Title 21, United States Code, Section 841(b)(1)(A); and (ii) 500 grams and more of mixtures and substances containing a detectable amount of cocaine, in violation of Title 21, United States Code, Section 841(b)(1)(B).

(Title 21, United States Code, Sections 846.)

The bases for my knowledge and for the foregoing charge are, in part, as follows:

4. I am a Special Agent with the DEA, and I have been personally involved in the investigation of this matter. This Affidavit is based upon my personal participation in the investigation of this matter, my conversations with law enforcement agents and others, and my examination of reports and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

## The Investigation

5. Based on my participation in this investigation, including my conversations with other law enforcement agents and review of law enforcement reports and records, I have learned the following, in substance and in part:

   a. The DEA has been conducting an investigation of a drug trafficking organization (the "DTO") with possible ties to Mexico.

   b. Beginning in or about April 2022, a confidential informant (the "CI") working with the DEA engaged in a series of conversations via WhatsApp with a member of the DTO ("CC-1"), believed to be based in Mexico and using a Mexican phone number, about a sale of narcotics.[1] During the course of these conversations, CC-1 agreed to sell the CI approximately 10 pounds of methamphetamine for approximately $3,200 per pound as well as an unspecified amount of heroin.

---

[1] The CI has a prior conviction for narcotics trafficking and is presently cooperating with law enforcement for the possibility of receiving a reduced prison sentence.

c.  On or about April 30, 2022, CC-1 informed the CI that a truck containing narcotics would be traveling from the vicinity of Arizona to the vicinity of New Jersey or Pennsylvania.

d.  On or about May 1, 2022, shortly before midnight, CC-1 contacted the CI and indicated that the truck containing narcotics would be arriving the next day in the vicinity of Pine Island, New York.

e.  On or about May 2, 2022, at approximately 12:42 p.m., the CI received a text message from a phone with a call number ending in 5452 (the "5452 Number") providing a particular address for a farm in Pine Island (the "Meeting Location"). The CI subsequently spoke to an individual using the 5452 Number, who indicated, in sum and substance, that he would meet the CI at the Meeting Location and would be in a Volvo truck.

f.  Before traveling to the meeting location, law enforcement officers provided the CI with a recording device and the equivalent of approximately $40,000 in fake United States Currency (the "Fake Buy Money"). Law enforcement officers also searched the CI for contraband. The CI then drove to the Meeting Location. Law enforcement officers followed the CI's vehicle until shortly before it entered the Meeting Location.

g.  At approximately 1:03 p.m., the CI arrived at the Meeting Location. After arriving at the Meeting Location, the CI observed a black Volvo tractor-trailer truck (the "Truck"), with a trailer approximately 53 feet in length. The CI approached the driver's side door of the Truck and encountered an individual later identified as ROMAN MUNOZ, the defendant. After discussion, MUNOZ handed a backpack to the CI, which was later determined to contain narcotics. The CI took the backpack to the vehicle in which the CI had arrived at the Meeting Location and retrieved a bag containing the Fake Buy Money. The CI returned to the Truck and handed the bag containing the Fake Buy Money to MUNOZ. During the transaction, the CI opened the backpack received from MUNOZ and saw that it appeared to contain narcotics. The CI took a photograph of the contents of the backpack and sent it to CC-1. At approximately 1:08 p.m., the CI departed from the Meeting Location.

h.  Shortly after the CI left the Meeting Location, law enforcement officers contacted the CI by telephone and confirmed that the CI had obtained narcotics. After discussion with the CI, law enforcement officers went to the Meeting Location.

i. When they arrived at the Meeting Location, several law enforcement officers approached the Truck. After opening the driver's side door, officers observed EFRAIN FERNANDEZ, the defendant, standing next to a bunk bed in the back of the Truck. Immediately next to FERNANDEZ, in plain view, officers saw approximately four cylinders wrapped in brown duct tape, that, based on their training and experience, appeared consistent with packaged controlled substances.

j. After obtaining FERNANDEZ's consent, at approximately 1:12 p.m., officers searched the Truck. During the search, officers inspected the four cylinders on the top bunk and found that they each contained approximately 1 pound of methamphetamine. These cylinders also matched the description of the narcotics purchased by the CI. Officers also observed a powdery substance on the top bunk.

k. During their search of the Truck, officers also identified approximately sixteen additional similarly sized packages containing what appeared to be methamphetamine in two cubbies accessible from the top bunk. One of the cubbies also contained the Fake Buy Money used by the CI to purchase the narcotics, as well as approximately three packages containing a substantial quantity of United States currency. Officers also found a crate containing, among other things, a powdery substance located between the driver and passenger seat of the Truck.

l. While certain law enforcement officers approached the Truck, other officers went to an office (the "Office") at the Meeting Location. Outside of the Office, officers observed MUNOZ speaking to another individual (the "Owner"), later identified as the owner of the farm that was used as the Meeting Location. Officers spoke to MUNOZ and the Owner. The Owner informed the officers that MUNOZ had arrived at the Meeting Location in the Truck.

m. After being advised of their *Miranda* rights, MUNOZ and FERNANDEZ each provided statements to law enforcement.

n. During his statement, MUNOZ indicated, in substance and in part, the following: MUNOZ and FERNANDEZ were being paid a total of $10,000 for transporting narcotics to New York, and he and FERNANDEZ would share the money evenly. MUNOZ also indicated that, after the sale to the CI, he had provided the bag containing the Fake Buy Money to FERNANDEZ, who unpacked the contents and placed the Fake Buy Money in the driver's side cubby accessible from the top bunk. MUNOZ's account is corroborated by

surveillance footage, which shows that MUNOZ walked towards the Office, where he was subsequently located by law enforcement, several seconds after the CI departed from the Meeting Location. Based on my review of the interior of the Truck and the surveillance video, I do not believe that MUNOZ would have had sufficient time after the CI departed to climb to the top bunk, unpack the Fake Buy Money from the bag, and store it in the cubby.

   o. During his statement to law enforcement, FERNANDEZ denied knowing that there were narcotics in the Truck.

   p. After the transaction, the CI met with law enforcement officers and provided them with the backpack containing the apparent narcotics. Officers inspected one of the brown packages in the backpack obtained from the CI and found that it weighed approximately one pound and that the contents field-tested positive for the presence of methamphetamine. Officers also inspected a square brick recovered from the backpack obtained from the CI and found that it weighed approximately one kilogram and field tested positive for the presence of cocaine.

 WHEREFORE, deponent respectfully requests that ROMAN MUNOZ and EFRAIN FERNANDEZ, the defendants, be imprisoned or bailed, as the case may be.

_____
MARK HADZEWYCZ
Special Agent
Drug Enfoncement Administration

Sworn to before me this
3rd day of May, 2022

_____
THE HONORABLE PAUL E. DAVISON
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK